**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| N-BAR TRADE, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM SERVICES LLC, et al.,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:25-cv-00918 |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

## INTRODUCTION

Plaintiffs N-Bar Trade, Inc. and Aymen Mohammed (collectively, "Plaintiffs") oppose Defendants Amazon.com Services LLC and Amazon Payments, Inc.'s (collectively, "Amazon") Motion to Compel Arbitration. Amazon's motion should be denied because: (1) the arbitration provision in Amazon's Business Solutions Agreement ("BSA") is procedurally and substantively unconscionable; (2) Amazon waived its right to arbitration through inconsistent conduct; and (3) compelling arbitration would effectively deny Plaintiffs any forum for resolving their claims. The Court should deny Amazon's motion and allow this case to proceed on the merits.

Critically, Plaintiff Mohammed had no knowledge of any arbitration provision when doing business with Amazon. He only learned about the alleged arbitration requirement after filing suit in DC Superior Court, when Amazon's counsel contacted Plaintiffs' counsel informing them of the arbitration clause and suggesting joint consent to arbitration. Only after this forced

introduction to arbitration did Plaintiffs reluctantly participate in arbitration proceedings, which ultimately proved futile. This sequence of events demonstrates the fundamental unfairness of enforcing an arbitration provision that was never meaningfully disclosed to Plaintiffs.

## FACTUAL BACKGROUND

Plaintiffs opened an Amazon seller account in May 2020 during the COVID-19 pandemic to distribute essential protective equipment and supplies. See Compl. ¶¶ 11-12. Plaintiff Mohammed, the owner and sole employee of N-Bar Trade, Inc., invested his savings and borrowed substantial funds to establish the business. Id. ¶ 5. Initially, the business thrived as Plaintiffs sold critical pandemic supplies through Amazon's platform. Id. ¶ 14.

Beginning in 2021, Amazon engaged in a series of actions that destroyed Plaintiffs' business, including withholding sales proceeds, making unauthorized withdrawals from Plaintiffs' accounts, arbitrarily deactivating their seller account, and wrongfully retaining possession of valuable inventory—including cryptocurrency mining equipment. Id. ¶¶ 15-16. When Plaintiffs attempted to recover their property and damages, they encountered a convoluted and ineffective internal dispute resolution process. Id. ¶ 18.

Significantly, Mr. Mohammed had no knowledge of any arbitration provision or even a comprehensive Business Solutions Agreement when he established his business on Amazon's platform. Amazon deliberately concealed the arbitration provision within its voluminous terms, presenting the entire BSA as a simple "click-to-accept" requirement without highlighting material terms. This latent and deceptive presentation ensured that Mr. Mohammed, like most small sellers, would have no actual notice of the arbitration provision. The true nature and import of this provision was never specifically highlighted or explained to Plaintiffs. Id. ¶¶ 19-22.

In fact, Plaintiffs only learned about the alleged arbitration requirement after they filed suit in DC Superior Court, when Amazon's counsel contacted Plaintiffs' counsel and informed them of the purported arbitration provision. Amazon's counsel expressly requested that Plaintiffs agree to dismiss their DC Superior Court case and move the dispute to arbitration. Based on Amazon's representations and with few options available due to their financial condition after Amazon's destructive actions, Plaintiffs reluctantly agreed to withdraw their court action and attempt arbitration.

However, once the matter was before the AAA, Amazon immediately took steps to block the arbitration process. In a letter dated February 29, 2024, Amazon formally objected to Washington, DC as the arbitration venue, stating: "We write to state our objection to Claimant's requested locale of Washington, DC for this arbitration and request that the AAA designate the locale for this matter as Seattle, Washington." Despite being explicitly informed by both Plaintiffs' counsel and the AAA administrator that Plaintiffs could not financially afford arbitration, particularly if required to proceed in Seattle, Amazon insisted that the venue must be Seattle, Washington—across the country from Plaintiffs' location in Washington, DC.

While Amazon superficially suggested it would "agree to participate in a virtual (Zoom) or telephonic hearing so that neither party incurs travel costs," it simultaneously insisted that "in case of an in-person hearing, the hearing should take place in Seattle, Washington" and, most importantly, that "the locale for drawing potential arbitrators be from Seattle, Washington." Amazon's letter to the AAA made the remarkable claim that "Respondent should not have to incur the costs of travelling to defend itself in this arbitration"—despite Amazon being a trillion-dollar corporation and Plaintiffs being a financially devastated small business.

The AAA administrator, recognizing Plaintiffs' financial hardship, agreed to waive the administrative fees portion of Plaintiffs' costs. The administrator also suggested the possibility of finding an arbitrator who might take the case on a pro bono basis, but acknowledged this would be difficult. Amazon's insistence on Seattle-based arbitrators and Washington law made this virtually impossible, as pro bono arbitrators willing to handle a complex dispute for a financially distressed DC-based small business against one of the world's largest corporations would be extremely rare, if available at all.

Now, after deliberately undermining the previous arbitration attempt that it had itself requested, Amazon again seeks to compel arbitration—a process it has already demonstrated it will manipulate to deny Plaintiffs any meaningful forum for relief.

## LEGAL ARGUMENT

### I. The Arbitration Provision is Procedurally and Substantively Unconscionable

Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has recognized that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). Here, both procedural and substantive unconscionability render the arbitration provision unenforceable.

### A. Procedural Unconscionability

The BSA's arbitration provision is procedurally unconscionable because it was allegedly incorporated through an imperceptible clickwrap process on a take-it-or-leave-it basis, without Plaintiffs ever seeing or having any meaningful opportunity to negotiate its terms. See Compl. ¶¶

19-23. Courts in this district have found procedural unconscionability where there is "an absence of meaningful choice on the part of one of the parties." Fox v. Computer World Servs. Corp., 920 F. Supp. 2d 90, 97 (D.D.C. 2013).

This Circuit has long recognized that unconscionability exists where "the important terms [were] hidden in a maze of fine print and minimized by deceptive [] practices." *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C.Cir.1965). Specifically, the court must ask whether "each party to the contract, considering his obvious education or lack of it, ha[d] a reasonable opportunity to understand the terms of the contract." *Id.* The present case represents a textbook example of unconscionability under the *Williams* standard, as Mr. Mohammed had no reasonable opportunity to understand the arbitration provision that was deliberately buried within Amazon's voluminous terms.

Several factors establish procedural unconscionability here:

1. **No knowledge of any agreement's existence**: Most fundamentally, Mr. Mohammed was either never presented with any agreement at all during the account setup process, or at the very minimum, had no knowledge of whether such an agreement even existed. He never received any comprehensive agreement to review, nor did he physically sign any document containing an arbitration provision. To the extent Amazon claims a "click-to-accept" mechanism was involved, Mr. Mohammed has no recollection of encountering any such mechanism or being advised that he was entering into a binding agreement with specific terms. This complete absence of any conscious awareness of an agreement's existence represents the most extreme form of procedural unconscionability.

2. **No actual knowledge of arbitration provision**: Mr. Mohammed had no knowledge of the existence of any arbitration provision when establishing his business on Amazon's platform. The arbitration provision was deliberately concealed within Amazon's voluminous terms, buried deep within a complex agreement that no reasonable small business owner could be expected to fully review or comprehend. Amazon presented the entire BSA as a simple "click-to-accept" requirement for accessing their platform, deliberately obscuring material terms like arbitration. This latent and concealed presentation ensured that Mr. Mohammed, like most small sellers, would have no actual notice of the arbitration provision. He only learned about its existence when Amazon's counsel contacted Plaintiffs' counsel after Plaintiffs filed suit in DC Superior Court. This intentional concealment of material terms represents the most extreme form of procedural unconscionability, as there could not possibly have been any meeting of the minds regarding arbitration.

3. **Unequal bargaining power**: The disparity between Amazon—one of the world's largest corporations with a trillion-dollar valuation—and Mr. Mohammed's one-person operation could not be more stark. See Compl. ¶¶ 5-6, 19. This extreme power imbalance is precisely the context in which courts should scrutinize adhesion contracts.

4. **Absence of meaningful choice**: N-Bar Trade relied exclusively on Amazon's platform for its business operations. Id. ¶ 21. Without accepting Amazon's terms, Plaintiffs could not operate their business at all. This "business necessity" factor weighs heavily in favor of finding procedural unconscionability.

5. **No opportunity for negotiation**: Amazon presented its terms as non-negotiable, with no realistic ability for Plaintiffs to modify any provisions. Id. ¶ 22. This "take-it-or-leave-it" approach to essential business terms is a hallmark of procedural unconscionability.

6. **Hidden provision**: The arbitration clause was not prominently displayed or specifically highlighted during the registration process. Id. ¶ 20. Amazon intentionally designed its user interface to minimize attention to the arbitration provision, ensuring that sellers like Mr. Mohammed would proceed without any meaningful knowledge of this critical term.

Courts in this district have consistently held that procedural unconscionability can be established by showing that a party "had no meaningful choice but to accept the contract terms. Fox v. Computer World Servs. Corp., 920 F. Supp. 2d 90, 97 (D.D.C. 2013). That is precisely the situation here.

While the Supreme Court in AT&T Mobility v. Concepcion, 563 U.S. 333 (2011), limited certain state-law unconscionability doctrines, it did not eliminate unconscionability as a defense to arbitration clauses. Even after Concepcion and American Express Co. v. Italian Colors Restaurant, 570 U.S. 228 (2013), courts in this Circuit continue to recognize that extreme disparities in bargaining power can render contract terms procedurally unconscionable. See Ruiz v. Millennium Square Residential Ass'n, 156 F. Supp. 3d 176, 181 (D.D.C. 2016) (finding procedural unconscionability where there was "no opportunity to negotiate").

**B. Substantive Unconscionability**

The arbitration provision is also substantively unconscionable because its terms unreasonably favor Amazon and effectively deprive Plaintiffs of any meaningful ability to pursue their claims.

See Compl. ¶ 23. Substantive unconscionability concerns the actual terms of the contract and whether they are unreasonably favorable to one party. Fox, 920 F. Supp. 2d at 98.

The substantive unconscionability is evident in the following aspects:

1. **Prohibitive costs**: The cost of arbitration proceedings in Seattle would far exceed N-Bar Trade's remaining assets after Amazon's conduct decimated the business. See Compl. ¶ 23. This alone renders the forum effectively inaccessible to Plaintiffs. A detailed cost analysis reveals:

a. **Initial filing fees**: The American Arbitration Association's commercial arbitration filing fees alone range from $925 to $8,700 for cases with claims between $75,000 and $5,000,000, an insurmountable barrier for a financially devastated small business.

b. **Arbitrator compensation**: Arbitrators typically charge between $1,500 and $6,000 per day, with complex commercial disputes often requiring multiple hearing days.

c. **Amazon's strategic expansion of proceedings**: Amazon, with its virtually unlimited resources, can dramatically increase arbitration costs through procedural tactics such as extensive discovery requests, numerous pre-hearing motions, and lengthy evidentiary disputes, all of which increase arbitrator time and thus costs to Plaintiffs.

d. **Comparative financial capacity**: Amazon reported profits of over $30 billion in 2022, while Plaintiffs' business has been rendered insolvent by Amazon's actions. This disparity means Amazon can easily bear costs that would be ruinous for Plaintiffs.

2. **Distant forum**: Requiring a D.C.-based small business owner to arbitrate in Seattle imposes prohibitive travel expenses and logistical barriers. Id. This geographic burden includes:

a. Cross-country airfare, accommodations, and local transportation costs b. Potential for multiple trips for different phases of arbitration c. Difficulty in presenting witnesses and evidence from across the country

3. **Denial of access to justice**: The arbitration provision effectively insulates Amazon from accountability for the legal claims alleged in the complaint, including conversion and unjust enrichment. Id. ¶¶ 29-35.

The D.C. Circuit addressed the issue of prohibitive arbitration costs in *Cole v. Burns Int'l Sec. Servs., Inc.*, 105 F.3d 1465 (D.C.Cir.1997). While *Cole* dealt with federal statutory rights in the employment context, its reasoning about the fundamental unfairness of excessive arbitration costs could apply equally to state law claims and common law rights. The court observed that requiring a party to pay "arbitration fees, other than 'reasonable costs' analogous to federal court 'filing fees and other administrative expenses,'" would be "prohibitively expensive" and deter the party from pursuing their claims. *Id.* at 1484. The court's reasoning that "at a minimum... [legal] rights include both a substantive protection and access to a neutral forum in which to enforce those protections" reflects a fundamental principle of justice applicable to all forms of legal claims. *Id.* at 1482.

The court in *Cole* noted something particularly relevant to this case: "We are unaware of any situation in American jurisprudence in which a beneficiary of a [legal right] has been required to pay for the services of the judge assigned to hear her or his case." *Id.* at 1484. This principle

applies with equal force to Plaintiffs' state law and common law claims, where a prohibitively expensive arbitration forum would effectively deny them any meaningful opportunity to seek redress.

In Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 90 (2000), the Supreme Court recognized that prohibitive arbitration costs could render an arbitration agreement unenforceable if they effectively prevent a party from vindicating their rights. The Court stated that "the existence of large arbitration costs could preclude a litigant... from effectively vindicating her... rights in the arbitral forum."

While American Express Co. v. Italian Colors Restaurant, 570 U.S. 228 (2013), limited certain applications of the "effective vindication" doctrine, it did not overrule Green Tree or categorically reject cost-based challenges to arbitration provisions. Instead, Italian Colors distinguished between situations where pursuing individual arbitration would be merely "not worth the expense" versus situations where arbitration costs create an effective inability to access the forum at all. Id. at 236-37.

The circumstances here present the more extreme case that even Italian Colors acknowledged might warrant relief—where the costs are so prohibitive that they constitute "a prospective waiver of a party's right to pursue [legal] remedies." Id. at 236. Unlike the plaintiff in Italian Colors, who simply faced an economically irrational cost-benefit analysis, Plaintiffs here face a complete financial impossibility to access the arbitral forum at all, having been rendered insolvent by the very party now seeking to compel arbitration.

## II. Amazon Waived Its Right to Compel Arbitration Through Inconsistent Conduct

Even if the arbitration provision were not unconscionable, Amazon has waived its right to arbitration through conduct inconsistent with an intent to arbitrate. "A party waives its right to arbitration if it acts inconsistently with that right and, by doing so, prejudices the other party." Zuckerman Spaeder, LLP v. Auffenberg, 646 F.3d 919, 922 (D.C. Cir. 2011).

Amazon's conduct demonstrates waiver in several ways:

1. **Tactical forum shopping**: Amazon first removed this action from DC Superior Court to federal court based on diversity jurisdiction, only to then file this motion to compel arbitration. This sequential litigation strategy—first seeking federal court jurisdiction and then trying to avoid that very jurisdiction through arbitration—demonstrates Amazon's inconsistent approach to forum selection and suggests an intent to manipulate the judicial process rather than genuinely pursue arbitration.

2. **Inconsistent approach to arbitration**: After Plaintiffs initiated litigation in DC Superior Court, Amazon's counsel contacted Plaintiffs' counsel, informing them for the first time of the arbitration provision and expressly requesting that Plaintiffs agree to dismiss their court case and move the dispute to arbitration. However, once Plaintiffs reluctantly agreed and the matter was before the AAA, Amazon immediately took steps to make the arbitration process impossible to pursue.

3. **Tactical venue obstruction**: Despite being explicitly informed by both Plaintiffs' counsel and the AAA administrator that Plaintiffs were financially unable to afford arbitration, Amazon formally objected to Washington, DC as the venue and insisted that the venue must be Seattle, Washington. On February 29, 2024, Amazon's counsel submitted a letter

to the AAA specifically stating: "We write to state our objection to Claimant's requested locale of Washington, DC for this arbitration and request that the AAA designate the locale for this matter as Seattle, Washington." Amazon knew this cross-country venue would make arbitration financially impossible for Plaintiffs.

4. **Disingenuous appearance of flexibility**: While Amazon stated in its February 29, 2024 letter to the AAA that it would "agree to participate in a virtual (Zoom) or telephonic hearing so that neither party incurs travel costs," it simultaneously insisted that "the locale for drawing potential arbitrators be from Seattle, Washington," and that "in case of an in-person hearing, the hearing should take place in Seattle, Washington." This superficial flexibility masked Amazon's true intent to ensure that regardless of hearing format, the arbitrator would be from Seattle and the proceedings governed by Washington law—effectively keeping control of the forum in Amazon's home territory despite the financial burden on Plaintiffs.

5. **Undermined AAA's hardship accommodations**: The AAA administrator, recognizing Plaintiffs' financial hardship, agreed to waive the administrative fees portion of Plaintiffs' costs. The administrator also suggested trying to find an arbitrator who might take the case on a pro bono basis, while acknowledging this would be difficult. Amazon deliberately undermined these accommodation efforts by insisting on Seattle-based arbitrators, knowing that finding a pro bono arbitrator in Seattle willing to handle a dispute for a financially distressed DC-based small business would be virtually impossible.

6. **Exploited cost disparities**: In its letter to the AAA, Amazon even went so far as to argue that "Respondent should not have to incur the costs of travelling to defend itself in this

arbitration"—despite Amazon being a trillion-dollar corporation and Plaintiffs being a financially devastated small business. This brazen inversion of the parties' financial realities reveals Amazon's true intent to exploit cost disparities to block Plaintiffs from accessing any forum for relief.

7. **Prejudice to Plaintiffs**: Plaintiffs have been severely prejudiced by Amazon's inconsistent conduct. They withdrew their court action based on Amazon's specific request to move the dispute to arbitration, only to find that Amazon would then take deliberate steps to make that forum impossible to access. This caused additional delays, increased costs, and effectively denied Plaintiffs any forum for resolving their claims.

In the D.C. Circuit, courts have found waiver where a party has "acted inconsistently with the arbitration right" and "prejudiced the other party by their actions." Khan v. Parsons Glob. Servs., Ltd., 521 F.3d 421, 425 (D.C. Cir. 2008). Amazon's inconsistent approach to arbitration clearly satisfies this standard. After specifically requesting that Plaintiffs withdraw from court proceedings and attempt arbitration, Amazon's subsequent tactical venue demands effectively rendered that forum inaccessible, demonstrating conduct entirely inconsistent with a genuine intent to arbitrate and substantially prejudicing Plaintiffs.

## III. Compelling Arbitration Would Effectively Deny Plaintiffs Any Forum for Resolving Their Claims

The Supreme Court has recognized that arbitration agreements may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. One such equitable principle is that a party cannot be compelled to arbitrate where doing so would effectively deny them any forum for resolving their claims.

In this case, compelling arbitration would have precisely this effect:

1. **Financial impossibility**: Plaintiffs' business has been devastated by Amazon's conduct, leaving them without the resources to pursue arbitration in Seattle. See Compl. ¶¶ 19-23. This financial reality creates an insurmountable barrier to accessing the arbitral forum.

2. **Previous failed attempt**: Plaintiffs already attempted to initiate arbitration, but that process failed to provide any meaningful resolution due to Amazon's tactical venue demands. This prior experience demonstrates the practical futility of arbitration in this case.

3. **Amazon's ability to escalate costs**: Amazon can and likely would employ tactics to drive up arbitration costs beyond what any small business could reasonably bear. Such tactics might include:

a. Filing numerous preliminary motions requiring arbitrator time and rulings b. Requesting extensive document production and depositions c. Raising complex legal arguments requiring detailed briefing d. Prolonging proceedings through procedural objections and scheduling delays

Each of these tactics would increase arbitrator fees and administrative costs, which would fall at least partially on Plaintiffs, effectively pricing them out of the forum. Unlike court proceedings, where judges are paid by the public, arbitrators bill by the hour—creating a perverse incentive structure that allows wealthy parties to exploit financial disparities.

4. **Effective denial of rights**: The combination of prohibitive costs, distant forum, and Amazon's past conduct demonstrates that arbitration would not provide a viable forum for Plaintiffs to vindicate their rights.

The D.C. Circuit emphasized in *Cole v. Burns Int'l Sec. Servs.* that "at a minimum, statutory rights include both a substantive protection and access to a neutral forum in which to enforce those protections." 105 F.3d 1465, 1482 (D.C. Cir. 1997). The court concluded that requiring a party to pay excessive arbitration costs would effectively deny that party their rights, stating: "We are unaware of any situation in American jurisprudence in which a beneficiary of a federal statute has been required to pay for the services of the judge assigned to hear her or his case." *Id.* at 1484. The court recognized that forcing parties to pay substantial arbitrator fees "would undermine Congress's intent" to provide access to a forum for vindicating statutory rights. *Id.*

This principle is directly applicable here, where the costs of arbitration—particularly with Amazon's insistence on a Seattle venue—would effectively prevent Plaintiffs from pursuing their claims at all. As the D.C. Circuit noted in *Cole*, such a result "would be inconsistent with the underlying purposes" of providing forums for dispute resolution. *Id.* at 1485.

While the Supreme Court in Italian Colors limited the application of the "effective vindication" doctrine for class-action waivers, it did not eliminate the doctrine entirely. As Justice Kagan explained in her dissent, the majority still recognized that the doctrine would apply to "a provision in an arbitration agreement forbidding the assertion of certain statutory rights" or to the erection of excessive filing and administrative fees that would make access to the forum impracticable. Italian Colors, 570 U.S. at 242 (Kagan, J., dissenting).

The Court in Italian Colors did not address the unique situation presented here—where the party seeking to compel arbitration has itself rendered the opposing party financially unable to access the arbitral forum through the very conduct at issue in the case. Indeed, the Second Circuit, even after Italian Colors, reaffirmed that "a court may invalidate an arbitration agreement that, 'while not denying a party to a lawsuit any statutory right, provides such a small or inadequate forum

that the party is essentially denied access to the forum.'" Gold v. N.Y. Life Ins. Co., 730 F.3d 137, 142 (2d Cir. 2013) (quoting In re Am. Express Merchants' Litig., 681 F.3d 139, 147 n.20 (2d Cir. 2012)).

Here, the facts demonstrate that compelling arbitration would effectively deny Plaintiffs any meaningful opportunity to pursue their claims—an outcome that contradicts basic principles of equity and access to justice.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Amazon's Motion to Compel Arbitration and allow this case to proceed in this forum.

The documents submitted by Amazon itself confirm the fundamental unfairness of compelling arbitration in this case. In Amazon's letter to the AAA dated February 29, 2024—a letter sent after Amazon had specifically requested that Plaintiffs dismiss their court action in favor of arbitration—Amazon baldly claimed that it "should not have to incur the costs of travelling to defend itself in this arbitration." This statement, from a trillion-dollar corporation demanding that a financially devastated small business travel across the country to pursue arbitration that Amazon itself requested, vividly illustrates why enforcing the arbitration provision would be unconscionable and unjust.

Amazon has already demonstrated through its prior conduct that it will use procedural maneuvers to prevent any meaningful arbitration from occurring. After inducing Plaintiffs to withdraw their court action in favor of arbitration, Amazon promptly denied the financially distressed Plaintiffs any realistic possibility of proceeding in that forum by insisting on an impossible venue. The Court should not allow Amazon to repeat this tactical obstruction of

justice by again compelling arbitration that it has no genuine intention of meaningfully participating in.

Respectfully submitted,

Respectfully,

Kamal Nawash
_/S/____________________________________

Kamal Nawash, Esquire #458755
The Nawash Law Office
1050 Connecticut Avenue, N.W., Suite 500
Washington, D.C. 20036

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| N-BAR TRADE, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.: 1:25-cv-00918 |
| v. | ) | |
| | ) | |
| AMAZON.COM SERVICES LLC, et al., | ) | |
| Defendants. | ) | |
| | ) | |

**POINTS AND AUTHORITIES**

1. The record herein.
2. Federal Arbitration Act ("FAA"), 9 U.S.C. § 2.
3. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011),
4. Fox v. Computer World Servs. Corp., 920 F. Supp. 2d 90, 97 (D.D.C. 2013).
5. *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C.Cir.1965),
6. Ruiz v. Millennium Square Residential Ass'n, 156 F. Supp. 3d 176, 181 (D.D.C. 2016),
7. *Cole v. Burns Int'l Sec. Servs., Inc.*, 105 F.3d 1465 (D.C.Cir.1997).
8. In Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 90 (2000),
9. Zuckerman Spaeder, LLP v. Auffenberg, 646 F.3d 919, 922 (D.C. Cir. 2011).
10. Khan v. Parsons Glob. Servs., Ltd., 521 F.3d 421, 425 (D.C. Cir. 2008,

11. Forum impracticable. Italian Colors, 570 U.S. at 242 (Kagan, J., dissenting).

12. Gold v. N.Y. Life Ins. Co., 730 F.3d 137, 142 (2d Cir. 2013),

Kamal Nawash

_/S/______________________________

Kamal Nawash #458755

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Troy Benjamin Albert :

Plaintiff :

v. : Case Number 2025 SCB 000498

: Judge Peter Krauthamer
:
:

Amin Sahrai

Defendants

**ORDER**

UPON CONSIDERATION of Plaintiff's Opposition, it is ORDERED, that Defendant's motion to Compel Arbitration be DENIED.

________________________________
JUDGE

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 21, 20025, a copy of the foregoing opposition to summary judgment was delivered to:

**Patrick John Curran , Jr.**
DAVIS WRIGHT TREMAINE
LLP
1301 K Street, NW
Suite 500 East
Washington, DC 20005
202-973-4200
Email: patcurran@dwt.com
*ATTORNEY TO BE NOTICED*

**Patrick John Curran , Jr.**
(See above for address)

__/S/_________________

Kamal Nawash #458755