**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| N-BAR TRADE, INC., *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 25-918 (RC) |
| | : | | |
| v. | : | Re Document No.: | 4 |
| | : | | |
| AMAZON.COM SERVICES LLC, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

**I. INTRODUCTION**

Plaintiffs N-Bar Trade, Inc. ("N-Bar") and Aymen Mohammed ("Mr. Mohammed," and together with N-Bar, "Plaintiffs") bring this action against Defendants Amazon.com Services LLC and Amazon Payments, Inc. (together, "Amazon"), seeking damages for alleged violations of contractual obligations between Amazon and N-Bar, a third-party seller on the Amazon.com platform. *See* Compl., ECF No. 1-1. Amazon moves to compel arbitration pursuant to the terms of its Business Solutions Agreement with Plaintiffs. *See* Defs.' Mot. Compel Arbitration ("Defs.' Mot."), ECF No. 4. For the reasons below, the Court grants Amazon's Motion to Compel Arbitration and dismisses the action without prejudice.

**II. BACKGROUND**

**A. Factual Background**

Amazon is an online retailer that permits third parties to register selling accounts and sell products directly to Amazon customers. In May 2020, Mr. Mohammed registered N-Bar as a third-party seller on the Amazon.com platform, through which N-Bar sold pandemic-related supplies. *See* Pls.' Am. Opp'n to Defs.' Mot. Compel Arbitration ("Pls.' Opp'n") at 2, ECF No.

8. N-Bar's seller account remained active until Amazon terminated it on February 16, 2022. Gallucci Decl. ¶ 12, ECF No. 4-2.

To register a selling account, Amazon requires third-party sellers to accept and agree to Amazon's Business Solutions Agreement ("BSA") and the policies it incorporates. *Id*. ¶ 6. Amazon explains that it "provides all sellers with an opportunity to review the BSA before they decide whether to accept its terms and register a selling account through a hyperlink that is present on the Seller Agreement page." *Id.* A seller cannot complete the online account registration process unless he clicks an "Agree and continue" button on the Seller Agreement page. *Id.* ¶¶ 7–8. In 2020, when Mr. Mohammed registered N-Bar's seller account, that page contained a notice stating: "By clicking on 'Agree and continue,' you agree to the Amazon Services Business Solutions Agreement." *Id.* ¶ 8. The BSA was "immediately accessible through a hyperlink in blue text." *Id.*

Section 18 of the BSA, titled "Miscellaneous," contains a provision mandating arbitration of disputes arising under the BSA: "Amazon and [the seller] both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court . . . ." Gallucci Decl. ¶ 10, Ex. A ("BSA") § 18, ECF No. 4-3. In the same paragraph, the BSA provides: "The arbitration will be conducted by the American Arbitration Association (AAA) under its commercial rules." *Id.* The AAA's commercial rules, in turn, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim," as well as "the power to determine the existence or

validity of a contract of which an arbitration clause forms a part." Curran Decl. ¶ 7, Ex. A ("AAA Commercial Arbitration Rules and Mediation Procedures") R-7(a)–(b), ECF No. 4-7.

### B. Procedural Background

In November 2023, Plaintiffs filed suit against Amazon in the Superior Court of the District of Columbia, bringing claims for alleged breach of contract. *See* Defs.' Mot. at 6. In January 2024, Amazon advised Plaintiffs that their claims were subject to a binding arbitration agreement in the BSA and asked Plaintiffs to dismiss their lawsuit and pursue their claims in arbitration. *Id.* Plaintiffs agreed to do so. *Id.* N-Bar's counsel emailed the AAA to initiate a commercial arbitration, and the AAA requested that Plaintiffs remit the appropriate filing pursuant to its rules. *Id.* However, after a disagreement with Amazon over the proper arbitration locale, Plaintiffs asked the AAA to close the matter. *Id.* at 6–7; Pls.' Opp'n at 3. Plaintiffs then sought to reinstate their case in the D.C. Superior Court, but the court denied this request. Defs.' Mot. at 6–7.

In February 2025, Plaintiffs filed another complaint against Amazon in the D.C. Superior Court, stating claims for "contract enforcement," conversion, unjust enrichment, and intentional infliction of emotional distress. *See* Compl. ¶¶ 24–42. Plaintiffs allege in their complaint that starting in 2021, Amazon breached contractual obligations with N-Bar when it withheld sales proceeds and other assets from N-Bar, withdrew funds from N-Bar's account, and ultimately terminated N-Bar's seller account. *Id.* ¶¶ 15–17. Amazon removed the case to this Court pursuant to 28 U.S.C. § 1332 and thereafter moved to compel arbitration of the case pursuant to the BSA's mandatory arbitration provisions. *See* Corrected Notice of Removal, ECF No. 3-1; Defs.' Mot. at 1.

### III.  LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), a written provision requiring arbitration of a dispute arising out of a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ."  9 U.S.C. § 2.  "The FAA thereby places arbitration agreements on equal footing with other contracts," *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010), and requires courts to "enforce arbitration contracts according to their terms," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019).  Through an arbitration agreement, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Id.* at 67–68 (citation modified).

In considering a motion to compel arbitration, a court first determines whether an arbitration agreement exists between the parties.  *See id.* at 69; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  The court makes this determination pursuant to the summary judgment standard of Federal Rule of Civil Procedure 56, treating the motion to compel "as if it were a request for summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate."  *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (citation omitted).  Under Rule 56(a), summary judgment is granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an arbitration agreement.  *See Mercadante v. XE Servs., LLC*, 78 F. Supp. 3d 131, 136 (D.D.C. 2015).  "The burden then shifts to [the non-moving party] to show

that there is a genuine issue of material fact as to the making of the agreement." *Id.* (quoting *Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 129 (D.D.C. 2013)). If the pleadings and evidence submitted by the parties show that there is no genuine dispute as to those facts and that the moving party is entitled to arbitration as a matter of law, the court must compel arbitration. *See id.*

### IV.  ANALYSIS

Amazon moves to compel arbitration pursuant to the FAA and the terms of the BSA. Mr. Mohammed counters that he should not have to arbitrate the merits of his dispute with Amazon—whether Amazon breached its contractual provisions with N-Bar—because the BSA's arbitration provisions (collectively, "Arbitration Agreement" or "Agreement") are procedurally and substantively unconscionable and therefore invalid. And regardless, Mr. Mohammed argues, Amazon has waived its right to compel arbitration through inconsistent conduct.

When a party moves to compel arbitration, "a court's role is limited to determining whether there is a valid agreement to arbitrate, and whether the specific dispute falls within the scope of the arbitration agreement." *Mobile Now, Inc. v. Sprint Corp.*, 393 F. Supp. 3d 56, 63 (D.D.C. 2019). Here, however, Amazon argues that the Arbitration Agreement grants the arbitrator the power to resolve "gateway" questions of "arbitrability," including whether the parties' contractual dispute is within the scope of the Agreement and whether the Agreement is invalid due to unconscionability. *See* Defs.' Mot. at 11–12. An agreement to delegate threshold arbitrability questions to the arbitrator is "simply an additional, antecedent agreement" on which "the FAA operates . . . just as it does on any other" arbitration agreement. *Rent-a-Ctr.*, 561 U.S. at 70. Therefore, if a court determines that an arbitration agreement exists, and if that agreement

5

delegates arbitrability questions to the arbitrator, a court may not decide those questions. *See Henry Schein*, 586 U.S. at 69.

As set forth below, the Court determines that the parties formed an agreement to arbitrate, that this agreement delegates arbitrability questions to the arbitrator, and that Amazon has not waived its right to compel arbitration through inconsistent conduct. Accordingly, the Court mandates arbitration and refrains from ruling on Mr. Mohammed's unconscionability arguments, which must be referred to the arbitrator.

### A. Existence of an Arbitration Agreement

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). "[B]efore referring a dispute to an arbitrator," however, "the court determines whether a[n] . . . arbitration agreement exists." *Henry Schein*, 586 U.S. at 69. This issue—whether the parties formed an agreement to arbitrate a certain dispute—is for courts to decide. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide."). In resolving that question, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. Amazon asserts that Washington law applies here, and Mr. Mohammed does not challenge the substance of that claim.[1] *See* BSA § 18 (providing that the BSA's "Governing Laws" are "the laws of the

---

[1] In his Opposition to Amazon's Motion to Compel, Mr. Mohammed appears to criticize Amazon's contention that Washington law governs their contractual dispute. *See* Pls.' Opp'n at 12. However, he does not offer any substantive argument as to why District of Columbia law should apply instead. Regardless, the contract-formation inquiry is substantially similar under the laws of Washington state and the District of Columbia, and applying District of Columbia law would not change the Court's conclusion that the parties here formed an agreement to arbitrate. *See, e.g.*, *Christian v. Uber Techs., Inc.*, 775 F. Supp. 3d 272, 278 (D.D.C. 2025).

State of Washington" and other applicable federal law). Washington law provides that a contract is formed when the parties "objectively manifest their mutual assent" to its terms. *Hauenstein v. Softwrap Ltd.*, No. C07-0572MJP, 2007 WL 2404624, at *2 (W.D. Wash. Aug. 17, 2017) (citing *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177–78 (2004)).

Amazon has met its initial burden of showing that the parties formed an agreement to arbitrate. As established by the evidence Amazon submits, Mr. Mohammed manifested assent to the terms of the BSA when he registered online for an Amazon selling account. On the Seller Agreement page, Mr. Mohammed was required to click an "Agree and continue" button, and a message above the button indicated the following: "By clicking on 'Agree and continue,' you agree to the Amazon Services Business Solutions Agreement." *See* Gallucci Decl. ¶¶ 7–8. The BSA was "immediately accessible through a hyperlink in blue text." *Id.* ¶ 8. And Section 18 of the BSA contains the Agreement's arbitration provisions. *See* BSA § 18. Under Washington law, clicking a button to "agree" to the terms of a contract is considered a manifestation of assent to the contract, including any arbitration provisions found therein. *See, e.g.*, *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1167–71 (W.D. Wash. 2013) (compelling arbitration because the plaintiffs clicked on a box indicating they had read Amazon's BSA and agreed to its terms); *Costless Wholesale, Inc. v. Amazon.com Servs. LLC*, No. SACV 23-01330-CJC (JDEx), 2023 WL 6224825, at *3 (C.D. Cal. Sept. 20, 2023) (finding Amazon's BSA to be "an enforceable 'clickwrap' agreement, routinely upheld under Washington law"); *Hauenstein*, 2007 WL 2404624, at *2 (compelling arbitration because the plaintiff "manifested his assent to the License Agreement by 'clicking' the appropriate box").

---

(finding that a contract forms under District of Columbia common law "when the parties 'express an intent to be bound . . .'" (citation modified) (quoting *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1004 (D.C. 2008))).

7

Although Mr. Mohammed does not affirmatively dispute that he clicked the "Agree and continue" button, he asserts that he "has no recollection" of clicking the button, being presented with the BSA during the seller registration process, or being advised that he would enter into a binding agreement by clicking the button. *See* Pls.' Opp'n at 5. However, neither a plaintiff's "inability to recall seeing reference to the terms" of a contract nor his "failure to review" them can overcome objective evidence of assent to the contract. *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1197 (W.D. Wash. 2024); *see also Michak v. Transnation Title Ins. Co.*, 148 Wash. 2d 788, 799 (2003) (noting that a party is bound to a contract he signed even if he did not read its terms). Amazon need not, and indeed presumably cannot, submit video evidence that Mr. Mohammed clicked the "Agree and continue" button. It is enough that Amazon submitted evidence that, as a matter of course, if a seller does not click that button, he "cannot advance to the next page of the seller registration process, cannot open a selling account, and cannot sell on Amazon." Gallucci Decl. ¶ 7; *see also Riensche v. Cingular Wireless, LLC*, No. C06-1325Z, 2006 WL 3827477, at *2 (W.D. Wash. Dec. 27, 2006) ("[E]vidence that signed agreements are required before service will be provided is evidence of the existence of a contract." (citing *Indus. Elec.-Seattle, Inc. v. Bosko*, 67 Wash. 2d 783, 797 (1966))).

Because Mr. Mohammed does not proffer evidence sufficient to rebut Amazon's proof that he manifested assent to the BSA, he has not created an issue of material fact as to contract formation. *See Cureton v. Duke*, 272 F. Supp. 3d 56, 62 (D.D.C. 2017) ("If the nonmoving party fails to proffer relevant evidence, the moving party may succeed on summary judgment."). Accordingly, the Court concludes that there is no genuine dispute that Amazon and Mr. Mohammed formed an agreement to arbitrate.

## B.  Delegation of Arbitrability

Given that the parties agreed to arbitrate, the Court next considers whether their Arbitration Agreement instructs it to refer arbitrability questions to the arbitrator.  "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so."  *First Options*, 514 U.S. at 944 (citation modified) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).  The D.C. Circuit has "held that the requisite clear and unmistakable delegation occurs when the parties' agreement incorporates arbitral rules that in turn assign questions of arbitrability to the arbitrator."  *Commc'ns Workers of Am. v. AT&T Inc.*, 6 F.4th 1344, 1347 (D.C. Cir. 2021).

Here, Section 18 of the BSA provides: "The arbitration will be conducted by the American Arbitration Association (AAA) under its commercial rules."  BSA § 18.  The AAA commercial rules, in turn, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim," as well as "the power to determine the existence or validity of a contract of which an arbitration clause forms a part."  AAA Com. Arb. Rules & Mediation Procs. R-7(a)–(b) (2022).  Following D.C. Circuit precedent, the Court holds that the BSA's incorporation of AAA rules, which empower the arbitrator to rule on "the arbitrability of *any* claim" and on "*any* objection" to the scope or validity of the Agreement, is "clear and unmistakable" evidence that the parties agreed for the arbitrator to decide threshold arbitrability questions, including whether Mr. Mohammed's contractual claims against Amazon are subject to arbitration and whether the Arbitration Agreement is invalid due to unconscionability.  *See id.* (emphasis added); *AT&T Inc.*, 6 F.4th at

9

1347 ("[T]he parties clearly and unmistakably delegated arbitrability questions to the arbitrator by incorporating the AAA rules.").

As a final matter before referring these questions to arbitration, the Court addresses whether Mr. Mohammed's challenge to the validity of the Arbitration Agreement precludes the Court from enforcing the Agreement's delegation provision. Mr. Mohammed argues that the Arbitration Agreement is invalid because it is procedurally and substantively unconscionable. *See* Pls.' Opp'n at 4. It is procedurally unconscionable, Mr. Mohammed contends, given the parties' unequal bargaining power and the lack of alternative marketplaces for small sellers like Mr. Mohammed, which put pressure on him to accept Amazon's terms. *See id*. at 5–7. And it is substantively unconscionable, he claims, because it burdens him with the steep costs of arbitration. *See id.* at 7–9.

"If a party challenges the validity of a delegation agreement, the district court 'must consider the challenge before ordering compliance,'" because a party cannot be made to arbitrate arbitrability, or any other matter, if he has not agreed to do so through a valid contractual provision. *Mercadante*, 78 F. Supp. 3d at 140 (quoting *Rent-A-Ctr.*, 561 U.S. at 70). However, the validity challenge "must be directed specifically at the delegation agreement and not at 'another provision of the contract, or to the contract as a whole,'" or else a court cannot consider the challenge. *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 70). This is because, unless a party has challenged an agreement's delegation provision specifically, the FAA instructs courts to treat it as valid and enforce it, "leaving any challenge to the [a]greement as a whole for the arbitrator." *Rent-A-Ctr.*, 561 U.S. at 70, 72.

The Court must refrain from considering Mr. Mohammed's unconscionability arguments because they are directed at the entire Arbitration Agreement, and not at its delegation provision

10

specifically. Mr. Mohammed does not argue that the Agreement's incorporation of AAA rules, which delegate arbitrability issues to the arbitrator, suffers from procedural or substantive unconscionability. In fact, nowhere in his Opposition to Amazon's Motion to Compel does Mr. Mohammed even reference arbitrability or the AAA rules, despite Amazon having specifically argued in its Motion that the parties agreed to delegate issues of arbitrability to the arbitrator. *See* Defs.' Mot. at 11–12. Because Mr. Mohammed does not challenge the validity of the Agreement's delegation provision, the Court must give it effect. Accordingly, the Court declines to address objections as to the Arbitration Agreement's scope and validity, as these matters must be decided by an arbitrator.[2]

### C. Waiver

Mr. Mohammed asserts that, even if the Arbitration Agreement is not unconscionable, he should not be compelled to arbitrate because Amazon has waived its right to compel arbitration under the Arbitration Agreement through inconsistent conduct. *See* Pls.' Opp'n at 11; *see also Khan v. Parsons Global Servs., Ltd.*, 521 F.3d 421, 424–25 (D.C. Cir. 2008) ("[C]onsistent with arbitration's contractual basis, a party may waive its right to arbitration by acting inconsistently with the arbitration right." (citation modified)). Mr. Mohammed argues that Amazon acted inconsistently with its arbitration right by allegedly obstructing the parties' initial attempt at arbitration—for example, by insisting that the arbitration be conducted in Washington state (even

---

[2] The Court specifically finds that the delegation provision in the parties' Arbitration Agreement precludes it from considering Mr. Mohammed's arguments that the Agreement is procedurally and substantively unconscionable, *see* Pls.' Opp'n at 4–10, and that compelling arbitration would deny Mr. Mohammed a forum for resolving his claims, *see id.* at 13–16, as this latter argument sounds in substantive unconscionability. Mr. Mohammed does not appear to contest arbitration on the grounds that his contractual dispute falls outside the scope of the Arbitration Agreement. Even if he did, the Court finds that this is a question of arbitrability that must be decided by an arbitrator.

if through Zoom) as opposed to Mr. Mohammed's preferred locale of the District of Columbia—and by removing the current case to federal court from the D.C. Superior Court before moving to compel arbitration. *See* Pls.' Opp'n at 11–13. This conduct, Mr. Mohammed declares, has prejudiced him and effectively denied him a forum to resolve his contractual claims against Amazon. *See id.* at 13.

As a preliminary matter, the Court finds that it may consider Mr. Mohammed's waiver arguments. Although "gateway procedural issues such as 'waiver, delay, or a like defense to arbitrability' are generally for the arbitrator, not a court, to resolve," *see Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 998 F.3d 449, 460 (D.C. Cir. 2021) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)), Mr. Mohammed's "specific assertion here of 'waiver-through-inconsistent-conduct claims' . . . may be decided by a court," *see HFA Specialty Acquisitions LLC v. NexGen Flight Sols., LLC*, No. 24-cv-1891, 2024 WL 4828043, at *4 (D.D.C. Nov. 19, 2024) (quoting *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008)).[3] This is for good reason. As the Sixth Circuit has explained, "[w]aiver-through-conduct issues ordinarily turn on whether a [party] abused the litigation or pre-litigation process, and a court is most adept at policing procedure-abusing conduct." *JPD, Inc.*, 539 F.3d at 394.

---

[3] Amazon does not appear to argue that the AAA's commercial rules delegate to the arbitrator the power to rule on claims of waiver through inconsistent conduct. Nevertheless, the Court notes a consensus among circuits to have considered this question that the AAA's commercial rules do not "clearly and unmistakably" delegate waiver-through-inconsistent-conduct claims to the arbitrator. *See, e.g.*, *Plaintiff's S'holders Corp. v. S. Farm Bureau Life Ins. Co.*, 486 F. App'x 786, 790 (11th Cir. 2012); *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016); *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 999 F.3d 257, 265 (5th Cir. 2021).

Mr. Mohammed's waiver arguments fail.  "[T]he party asserting waiver must demonstrate: (1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right."  *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023).  However, Mr. Mohammed submits no evidence that Amazon "engag[ed] in . . . litigation conduct evidencing an[] intent to relinquish [its] arbitration rights."  *HFA*, 2024 WL 4828043, at *5.  Amazon's choice to remove this case to federal court before moving to compel arbitration is not a "conscious decision to continue to seek judicial judgment on the *merits* of the arbitrable claims."  *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) (emphasis added) (citation omitted).  As Amazon notes, it filed its Motion to Compel Arbitration within seven days of removal, as required under Rule 81(c)(2)(C) of the Federal Rules of Civil Procedure.  *See* Defs.' Reply to Pls.' Opp'n to Defs.' Mot. ("Defs.' Reply") at 13, ECF No. 9.  Furthermore, Amazon's evidence shows that, far from obstructing the parties' initial attempt at arbitration, Amazon's disagreement with Mr. Mohammed about the proper locale for arbitration was lodged with the arbitrator and in the manner requested by the arbitrator.  *See* Curran Decl. ¶ 6, Ex. D, ECF No. 9-5; *id.* ¶ 7, Ex. E, ECF No. 9-6.  Finally, assuming the truth of Mr. Mohammed's allegation that he would be prejudiced if forced to arbitrate in Washington state, such allegation does not show that Amazon has declined to exercise its right to arbitrate or otherwise acted so inconsistently with that right as to constitute waiver.  To the contrary, the Court agrees with Amazon that the procedural history here shows that Amazon has consistently sought to bring Mr. Mohammed's claims to an arbitrator.  *See* Defs.' Reply at 12.  Therefore, the Court finds that Amazon has not waived its right to compel arbitration.

## V. DISMISSAL

Because the Court holds that arbitration is required under the parties' Arbitration Agreement, it must decide whether to dismiss the case without prejudice or to stay it pending arbitration.  "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also* 9 U.S.C. § 3.  Here, however, Mr. Mohammed did not request a stay in his Opposition to Amazon's Motion to Compel Arbitration, even though Amazon argued in its Motion that the Court should dismiss the case *unless* Mr. Mohammed requested a stay.  *See* Defs.' Mot. at 15.  The Court therefore finds, like other courts in this district, that dismissal is appropriate here.  *See, e.g.*, *Abadi v. Nat'l R.R. Passenger Corp.*, No. 22-cv-3684, 2024 WL 4441737, at *5 (D.D.C. Oct. 7, 2024), ("[Because] [the plaintiff] made no response to [the defendant's] request that the Court dismiss the case rather than issue a stay . . . dismissal is appropriate."); *L. Firm of LarJack, PLLC v. Citibank, N.A.*, No. 21-cv-1592, 2021 WL 4192030, at *6 (D.D.C. Sept. 15, 2021) (dismissing a case rather than staying it pending arbitration partly because "plaintiffs made no response to [the defendant's] request that the Court dismiss the case rather than issue a stay").

## VI. USE OF NONEXISTENT QUOTATIONS

As this Court has observed, "[c]ourts have recently seen increasing reliance on artificial intelligence in legal proceedings, leading to the use of nonexistent citations in court documents." *Williams v. Cap. One Bank, N.A.*, No. 24-cv-2032, 2025 WL 843285, at *7 (D.D.C. Mar. 18, 2025); *see id.* (collecting cases).  Concerningly, Mr. Mohammed's counsel, Mr. Kamal Nawash, may have relied on artificial intelligence to draft Mr. Mohammed's Opposition, which contains quotations that do not actually appear in the cases to which they are attributed.  *See* Defs.' Reply

at 11–12 & n.5 (explaining that Amazon was unable to locate several quotations cited in Mr. Mohammed's Opposition).

Mr. Nawash is advised that it is not acceptable to submit filings to the Court containing nonexistent quotations. Such conduct contravenes an attorney's duty toward his client to exercise professional judgment and responsibility. *See Park v. Kim*, 91 F.4th 610, 614 (2d Cir. 2024). In particular, Rule 11(b)(2) of the Federal Rules of Civil Procedure provides that "[b]y presenting to the court a pleading, written motion, or other paper," an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law . . . ." Fed. R. Civ. P. 11(b)(2). Furthermore, Rule 3.3(a)(1) of the District of Columbia Rules of Professional Conduct provides that an attorney "shall not knowingly . . . [m]ake a false statement of fact or law to a tribunal." D.C. R. Prof. Cond. 3.3(a)(1). The Court agrees with the Second Circuit that, at minimum, such rules "require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely." *Park*, 91 F.4th at 615.

Courts have taken diverse disciplinary actions against attorneys who have filed pleadings and other court papers citing nonexistent legal authorities and quotations, ranging from striking the pleadings, *see, e.g.*, *Grant v. City of Long Beach*, 96 F.4th 1255, 1256–57 (9th Cir. 2024); to ordering counsel to show cause why sanctions should not issue, *see, e.g.*, *Mata v. Avianca, Inc.*, No. 22-cv-1461, 2023 WL 3696209, at *1 (S.D.N.Y. May 4, 2023); and referring counsel to a court's grievance panel, *see, e.g.*, *Park*, 91 F.4th at 612. Because this case is being referred to arbitration, the Court refrains from taking further action against Mr. Nawash at this time.

However, if this case somehow returns to this Court, Mr. Nawash will be required to show cause why he ought not be sanctioned for his use of nonexistent quotations in his filing.

## VII.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Arbitration (ECF No. 4) is **GRANTED** and this action is dismissed without prejudice.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  October 22, 2025                                                                   RUDOLPH CONTRERAS
                                                                                                         United States District Judge